## Paul R. Fritsche v. David Clemow.

1. DOMESTIC ANIMALS—*Liability of Owner for Injuries Caused by.*— The owner or keeper of domestic and other animals not naturally inclined to commit mischief, such as dogs, horses and oxen, is not liable for any injury committed by them, unless it is shown that he previously had notice of the animal's mischievous propensity, or that the injury is attributable to some other neglect on his part, allegation and proof of *scienter* being generally necessary in such cases.

2. PLEADING—*Variance Between Allegation and Proof.*—Under a declaration that the defendant kept a dog he knew was accustomed to bite mankind, it is not enough for plaintiff to prove the dog had a savage and ferocious disposition and defendant knew it; but he is bound to prove his allegation that the dog was accustomed to attack and bite mankind and that defendant knew that.

3. EVIDENCE—*Not Justifying an Inference that Defendant Knew His Dog to be Dangerous.*—Evidence that defendant at times kept his dog chained up, does not justify an inference that he knew the dog to be dangerous or knew that he was accustomed to attack and bite mankind.

Trespass on the Case, for injuries caused by the bite of a dog. Appeal from the Circuit Court of Peoria County; the Hon. THEODORE N. GREEN, Judge presiding. Heard in this court at the October term, 1902. Affirmed. Opinion filed June 8, 1903.

ARTHUR KEITHLEY, attorney for appellant.

QUINN & QUINN, attorneys for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

The declaration in this suit by Fritsche against Clemow contained but one count. It alleged that defendant wrongfully kept a dog of a ferocious and malicious disposition, well knowing that said dog was accustomed to attack and bite mankind; that while defendant so kept him the dog attacked and bit plaintiff and wounded and lacerated one of plaintiff's legs, producing the injury for which he sought to recover damages. Defendant pleaded not guilty. On a second trial, at the close of plaintiff's proofs the court instructed the jury to find defendant not guilty. That verdict was returned, and a motion for a new trial denied. Defendant had judgment and plaintiff appeals.

The owner or keeper of domestic and other animals not naturally inclined to commit mischief, such as dogs, horses and oxen, is not liable for any injury committed by them, unless it is shown that he previously had notice of the animal's mischievous propensity, or the injury is attributable to some other neglect on his part, allegation and proof of *scienter* being generally necessary in such case. Stumps v. Kelley, 22 Ill. 140; Keightlinger v. Egan, 65 Ill. 235; Mareau v. Vanatta, 88 Ill. 132; Moss v. Pardridge, 9 Ill. App. 490; West Chicago St. R. R. Co. v. Walsh, 78 Ill. App. 595. The only averment of *scienter* here is that defendant well knew the dog was accustomed to attack and bite mankind.

In Keightlinger v. Egan, *supra,* it was held that an instruction which based defendant's liability on proof that he kept a dog which he knew to be of a savage and ferocious disposition, stated a different cause of action from the declaration which alleged that defendant kept a dog he knew was accustomed to bite mankind. Therefore, under the declaration here it was not enough for plaintiff to prove the dog had a savage and ferocious disposition and defendant knew it; but plaintiff was bound to prove his allegation that the dog was accustomed to attack and bite mankind and that defendant knew that.

This dog bit plaintiff on July 15, 1901. There is no proof he had ever before bitten any one. In 1898, Fred H. Burkhardt, then eleven years old, was going along the street delivering newspapers, and a dog came out of defendant's yard and ran toward the boy and barked and growled at him, and the boy was frightened and climbed over a fence to get out of his way, and a young lady came out of defendant's house and called the dog back. If this was the same dog, still it did not bite the boy, and this incident does not prove the dog was accustomed to attack and bite mankind. This was a bull-dog, and plaintiff and the newsboy each testified he had a mean, ugly face. But that would not warrant the jury in finding he was accustomed to attack and bite mankind. The dog was usually kept in the back yard. There was a fence of latticework, six feet high,

between that and the front yard, with a door in it. The back yard had on one side a tight board fence and on the other side a picket fence. One of these was six feet high and the other three feet. The only fence in front of defendant's front yard was a stone coping twelve or eighteen inches high. It is argued this arrangement of the fences justifies the inference they were thus constructed to restrain the dog, and that the dog was dangerous, and that defendant knew it. The lattice fence was shown to have been built several years before defendant moved there, and after defendant came in, the door in it was open or shut just as the last person to go through chanced to leave it. There is no proof the other fences of the back yard were built after defendant moved there, nor that they would keep in a dog. Stress is laid upon the proof the dog was tied up. Leslie Roszell, who delivered milk at defendant's place for several years, and delivered it in the back yard, and who left the lattice door open at the time the dog bit plaintiff, testified he had seen the dog tied once or twice when he went there delivering milk, but as a general thing he was loose. Theodore Weisbruch, who had lived next door to defendant all the time defendant had lived there, which he thought was ten or twelve years, and who had known the dog all that time, testified he saw the dog chained up sometimes—many times—but he believed he was mostly loose, and that the dog had run all over the neighborhood for years. This was the only proof the dog was ever tied up. It does not justify an inference that defendant knew him to be dangerous or knew he was accustomed to attack and bite mankind. Weisbruch also testified he had never heard of the dog biting any one, and had never seen him bother anybody. He also testified the dog did not look very bad, and the milkman testified it was a good-natured dog so far as he could see. Weisbruch and Roszell were the only witnesses who knew the dog at all. Plaintiff also proved that after he was bitten defendant told him he never knew the dog was vicious. This was substantially all the proof tending to show either that the dog was of a ferocious and

malicious disposition and accustomed to attack and bite mankind, or that defendant knew he was accustomed to attack and bite mankind. We are of opinion it did not warrant a verdict for plaintiff, and that the direction of the court was right.